INHABITANTS OF GARDINER *versus* INHABITANTS OF FARMINGDALE.

A person, who has been from his birth *non compos mentis* and whose parents are deceased, may *reside* in a town (within the meaning of the statute,) so as to acquire a legal settlement therein; and if he shall continue to reside in a town for the term of five years together, after he is twenty-one years of age, without receiving any support as a pauper from any town, he will gain a lawful settlement therein, in his own right.

THIS action is brought to recover for expenses incurred by the plaintiffs for the support of Nancy Sweatland, a pauper, whose legal settlement the plaintiffs allege was in Farmingdale.

THE FACTS AGREED UPON, sufficiently appear in the opinion of the Court.

The case was argued by *Danforth,* for the plaintiffs, and by *Bradbury, & Morrill,* for defendants.

The opinion of the Court was drawn up by

RICE, J.—The pauper, who is, and from her birth has been *non compos mentis,* had a derivative settlement in the town of Farmingdale. It is admitted by the parties, though the case does not find .the fact, that in August, 1851, she was more than 21 years of age.

After the death of her father she lived with her brother Seth, in Farmingdale, till the death of her mother, when she went to live with her sister, Mrs. Sherburn, in West Gardiner, where she remained three or four years, and until Aug. 1851. After the death of the mother, the pauper was supported by the brother and sister aforesaid, they having appropriated her interest as heir at law in the estate of her father.

From August, 1851, to Nov. 1856, the pauper was boarded in Gardiner, a part of the time with a nephew, and a part of the time with a Mrs Mayberry, her brother and sister paying for her board, under contracts which were renewed from year to year. In Nov. 1856, these parties refusing longer to pay for her board, she became chargeable.

It is conceded, that all the requirements of the statute have been complied with, requisite to charge the defendants, if the legal settlement of the pauper is in Farmingdale.

In view of these facts, the defendants contend, that under Rule 6, § 1, c. 32, R. S., 1841, the pauper has gained a settlement in Gardiner.

The provision relied on reads as follows:—" Any person of the age of twenty-one years, who shall hereafter reside in any town within this State, for the term of five years together, and shall not during that time receive, directly or indirectly, any supplies or support as a pauper, from any town, shall thereby gain a settlement in such town."

The plaintiffs, on the other hand, contend that the pauper,

in consequence of being *non compos mentis*, is incapable of gaining a settlement in her own right; that, to acquire a settlement in this way, the pauper must not only remain in the plaintiff town during a period of five years together, but must do so having the intention to make that her home, and that a person in her condition is incapable of having such an intention, and, therefore, though she lived in Gardiner for more than five years together, she did not *reside* there within the meaning of the statute.

There are many cases in the books, where, from the definition given to the word residence, (which, in this statute, means dwelling place or home,) such a conclusion might apparently be deduced. Thus, in *Jefferson* v. *Washington*, 19 Maine, 293, the Court say, that the words dwelling place or home, mean some permanent abode, or residence, with intention to remain; and, in *Turner* v. *Buckfield*, 3 Maine, 229, Mellen, C. J., says, that the Legislature, by the use of the expression "dwells and has his home," intended to designate some permanent abode, a residence with an intent to remain, or, at least, without an intention of removal. In *Wiscasset* v. *Waldoborough*, 3 Maine, 388, the Court said that the pauper, though incapable of gaining a settlement in his own right, by reason of mental imbecility, might acquire one derivatively from his father.

In *Warren* v. *Thomaston*, 43 Maine, 406, the Court say, "to establish a residence within the meaning of the statute, there must be personal presence without any present intention to depart. And, to break up such residence when once established, there must be departure with intention to abandon."

Many other cases will be found in our Reports where language of similar import is used, and used with entire accuracy. But, in applying the principles thus stated, reference must be had to the facts and circumstances in the cases in which the language occurs.

It is well settled, as a general principle, that married women, infants, slaves, and others in like condition, cannot, unless emancipated, gain a settlement in their own right, by a residence separate from their husbands, parents or masters. That

is to say, such persons while in that subordinate condition, cannot have an independent, separate residence. They are supposed to have no will, no intention in opposition to, or different from that of their superiors, and their legal residence follows that of their superiors. *Hallowell* v. *Gardiner*, 1 Maine, 93.

It has also been decided that persons *non compos mentis* are not emancipated on reaching the age of twenty-one years. *Wiscasset* v. *Waldoborough*, 3 Maine, 388; *Tremont* v. *Mt. Desert*, 36 Maine, 390. In the last case this principle was carried so far as to hold that supplies furnished to a child in that condition, though more than twenty-one years of age, constituted the father of such child a pauper.

Now it is believed that on examination of the cases in which the principle referred to has been announced, it will be found that the question before the Court, was, what was the real intention of the party whose residence was in controversy, or whether he was so situated as to be legally capable of having an intention or will, independent of the person to whom he was in subordination, rather than whether, being emancipated, he had sufficient mental capacity to act and determine for himself.

The law is well settled that a minor, who has been emancipated, may acquire a legal settlement in his own right. *Oldtown* v. *Falmouth*, 40 Maine, 160; *Lubec* v. *Eastport*, 3 Maine, 220.

So, too, of slaves. *Winchendon* v. *Hatfield*, 4 Mass. 123.

The same rule is applicable to persons *non compos mentis*. *Fairfax* v. *Vassalborough*, cited in argument in *Hallowell* v. *Gardiner*, 1 Maine, 96; *Sidney* v. *Winthrop*, 5 Maine, 123; *Leeds* v. *Freeport*, 10 Maine, 356; *Augusta* v. *Turner*, 24 Maine, 112.

But it may be suggested that these cases were decided under a different provision of the statute, and, therefore, are not authority in this case.

The cases last cited, except that of *Fairfax* v. *Vassalboro'*, were decided under the following provision of c. 122, § 2,

Gardiner *v.* Farmingdale.

of statute of 1821. "Any person *resident* in any town at date of the passage of this Act, who have not within one year previous to that date, received support or supplies from some town as a pauper, shall be deemed to have a settlement in the town where he then dwells and has his home."

Thus it will be perceived that the cases must have involved the question whether a person *non compos mentis*, who had been emancipated, was capable of so residing, or being *resident* in a town as thereby to gain a settlement under the provision of the Act of 1821. The principle involved in those cases would seem to be identical with that at issue in the case before us.

The pauper in question had been emancipated by the death of both her parents; she was more than twenty-one years of age; she was not under guardianship; she had long ceased to have a home in Farmingdale; she continued to live in Gardiner for more than five years together, and, during that time, received no supplies or support, directly nor indirectly, as a pauper, from any town. In view of these facts, was her *residence* in Gardiner during these five years, within the meaning of the statute? Within the principle of the decided cases, such was clearly the fact.

According to the agreement of parties, a nonsuit is to be entered.

TENNEY, C. J., HATHAWAY, APPLETON, and MAY, J. J., concurred.